# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| SHEPELL ORR, | ) |
| Petitioner, | ) ) ) |
| v. | ) CAUSE NO.: 2:16-CV-039-TLS ) |
| WARDEN, | ) ) ) |
| Respondent. | ) |

## OPINION AND ORDER

Shepell Orr, a pro se prisoner, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his murder convictions and consecutive 55 year sentences by the Lake County Superior Court on June 10, 2011, under cause number 45G01-1001-MR-1. [ECF No. 1.]

## BACKGROUND

In deciding this habeas petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Orr's burden to rebut this presumption with clear and convincing evidence. *Id.* On appeal from the denial of post-conviction relief, the Indiana Court of Appeals set forth the facts surrounding Orr's offenses as follows:

> At approximately 12:00 a.m. on December 31, 2009, Orr entered an apartment building located at 3513 Guthrie in East Chicago to visit a friend, and he walked past four people visiting in a hallway. Approximately forty-five minutes later, Orr left his friend's apartment and walked past the same four people, Steven Williams, Joshua Hayward, LaTonya Burnett, and Tyree Tolbert. As he passed by the group, Orr asked Williams, "What's that smart remark you said." Tr. at 223. Williams responded, "I don't know you to even be saying anything about you." *Id.* Orr then left the building, met Billy Galloway, who was sitting in Galloway's truck parked across the street, and got a firearm from Galloway.
>
> A few minutes later, Orr came back inside the apartment building and said to the

group, "Folks, let me holler at you." *Id.* at 225. In response, Tolbert walked outside with Orr. Orr then asked Tolbert, "what [Williams and Haywood were] on." *Id.* at 226. Tolbert interpreted that question to mean "like what [are] they about[?]" *Id.* Tolbert responded, "They ain't on nothing. They just moved out here with they [*sic*] wife and kids." *Id.* Orr then said to Tolbert, "Don't worry about it. I'm finna[1] kill everybody in this building." *Id.* at 227. Orr then pulled out a gun and entered the apartment building. After Orr entered the building, Burnett ran outside, and she and Tolbert ran to a friend's apartment inside a nearby building. As soon as they were inside, Tolbert heard multiple gunshots from the building where he had left Orr and the others.

A neighbor called 9-1-1, and officers arrived at the scene approximately ten minutes after the shootings to find Williams' and Haywood's dead bodies lying in pools of blood inside the apartment building. Williams had been shot seven times, and Haywood had been shot four times. There were no eyewitnesses to the shootings, but, after an investigation implicated Orr, police arrested him.

The State charged Orr with two counts of murder. A jury found Orr guilty as charged and the trial court entered a judgment of conviction accordingly. The trial court sentenced Orr to two consecutive terms of fifty-five years, for an aggregate sentence of 110 years.

*Orr v. State*, No. 45A04-1503-PC-87, slip op. pp. 2-3 (Ind. Ct. App. Oct. 7, 2015), [ECF No. 8-10].

After his conviction, Orr appealed, arguing only that the trial court committed reversible error in allowing the State to impeach a witness with extrinsic evidence of a prior inconsistent statement. [ECF No. 8-3 at 5; ECF No. 8-5 at 2.] The Indiana Court of Appeals affirmed Orr's conviction and sentence. [ECF No. 8-5.] Orr did not seek transfer to the Indiana Supreme Court. [ECF No. 8-2.] He admits as much. [ECF No. 1 at 1.]

On February 7, 2013, Orr filed a petition for post-conviction relief in State court. [ECF No. 8-1 at 1.] After a hearing, the post-conviction court denied Orr's request for post-conviction

---

[1] Citing the Urban Dictionary, the court of appeals interpreted "finna" an abbreviation of the phrase "fixing to" and means "going to."

2

relief. Orr appealed, arguing that he was denied the effective assistance of trial and appellate counsel. [ECF No. 8-10 at 2; ECF No. 8-7.] The Court of Appeals of Indiana denied Orr's appeal. [ECF No. 8-10.] Orr sought transfer to the Indiana Supreme Court raising the same issues he presented to the court of appeals. [ECF No. 8-11.] The Indiana Supreme Court denied transfer. [ECF No. 8-6.]

On January 26, 2016, Orr signed and submitted this federal habeas petition challenging his convictions and sentence, arguing that: (1) the trial court improperly admitted extrinsic evidence of a witness's prior inconsistent statement; (2) he received ineffective assistance of trial and appellate counsel because they both failed to challenge the voluntary manslaughter instructions; and (3) he received ineffective assistance of trial counsel because his attorney failed to adequately impeach Antonio Foster. [ECF No. 1 at 3, 4.]

## DISCUSSION

Orr's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

>     Court of the United States; or
>     (2) resulted in a decision that was based on an unreasonable determination
>     of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotation marks and citations omitted).

### A. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim in the State courts, Orr had to show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id*. at 693. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland* . . . ." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* (*citing Youngblood v. Alvarado*, 541 U.S. 652, 664 (2004)). This creates a "doubly

deferential" standard of review here. *Id.* "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *McNary,* 708 F.3d at 914.

### *1. The Indiana Courts reasonably found that trial counsel was not ineffective for not objecting to the jury instructions.*

At the conclusion of Orr's trial, the trial court instructed the jury regarding murder and voluntary manslaughter. The voluntary manslaughter instruction included a definition of sudden heat. In Indiana, "once a defendant presents evidence of sudden heat, the State bears the burden of disproving its existence beyond a reasonable doubt." *Eichelberger v. State*, 852 N.E.2d 631, 636 (Ind. Ct. App. 2006). The voluntary manslaughter instructions tendered in Orr's case were erroneous because they did not instruct the jury that the State must disprove sudden heat beyond a reasonable doubt before they could convict him of murder.[2] [ECF No. 8-10 at 8.] Orr argues

---

[2] At the close of evidence, the trial court instructed the jury regarding murder:

> The crime of Murder is defined by statute as follows:
> A person who knowingly or intentionally kills another human being commits Murder, a felony.
> Before you may convict the Defendant of Murder, the State must have proven each of the following elements:
> 1. The defendant
> 2. knowingly or intentionally
> 3. killed
> 4. Steven Williams
> If the State failed to prove each of these elements beyond a reasonable doubt, you must find the defendant not guilty.

(Appellate App. at 90.) The trial court gave an identical instruction for the second count of murder, replacing "Steven Williams" with "Joshua Haywood" (*Id.* at 91.)

The trial court's instruction on voluntary manslaughter was as follows:

> The Defendant is charged with Murder. Voluntary Manslaughter, Class A felony, is included in Murder. If the State proves the Defendant guilty of Murder, you need not consider the included crime(s). However, if the State fails to prove the Defendant

5

that his trial counsel was ineffective for not objecting to the trial court's voluntary manslaughter jury instructions or tendering correct instructions. The Indiana Court of Appeals disagreed. (*Id.*) In rejecting Orr's claim, the Indiana Court of Appeals properly identified *Strickland* as the governing standard. (*Id.* at 5.) Though the court acknowledged that the tendered voluntary manslaughter jury instructions were incorrect, the court found that Orr was not entitled to the

---

> committed Murder, you may consider whether the Defendant committed Voluntary Manslaughter, Class A felony, which the Court will define for you.
>
> You must not find the Defendant guilty of more than one crime for each count.
>
> \*\*\*
>
> The crime of Voluntary Manslaughter is defined by statute as follows:
> (a) "A person who knowingly or intentionally kills another human being while acting under sudden heat commits Voluntary Manslaughter. The offense is a Class A felony if it is committed by means of a deadly weapon."
> (b) "The existence of sudden heat is a mitigating factor that reduces what otherwise would be Murder to Voluntary Manslaughter."
>
> Before you may convict the defendant, as charged, the State must have proved each of the following elements:
> 1. The defendant
> 2. knowingly or intentionally
> 3. killed
> 4. Steven Williams
> 5. by means of a deadly weapon, and;
> 6. that the defendant did the killing while acting under sudden heat.
> If the State failed to prove each of these elements beyond a reasonable doubt, you must find the defendant not guilty of Voluntary Manslaughter, a Class a felony.

(*Id*. at 92, 93.) The trial court gave an identical instruction for the second count of voluntary manslaughter, replacing "Steven Williams" with "Joshua Haywood." (*Id.* at 94.)

The trial court then instructed the jury regarding the definition of sudden heat:

> The term "sudden heat" means a mental state which results from provocation sufficient to excite in the mind of the defendant such emotions as anger, rage, sudden resentment, jealousy or terror sufficient to obscure the reason of an ordinary person and as such prevents deliberation and premeditation, excludes malice and renders the defendant incapable of cool reflection prior to acting.

(*Id*. at 95.)

6

instructions and he could not show that he was prejudiced by them. (*Id.* at 5-12.)

> There is simply no evidence, let alone a serious evidentiary dispute, to show that sudden heat was a factor in the shootings. Orr was not entitled to a voluntary manslaughter instruction, and he cannot show that he was prejudiced by his trial counsel's failure to object to the trial court's erroneous instructions and to tender a proper instruction. *Massey*, 955 N.E.2d at 257.

(*Id.* at 11–12.)

This conclusion was reasonable. Under Indiana law, a voluntary manslaughter instruction is not warranted unless there is a serious evidentiary dispute regarding evidence of sudden heat. *Massey v. State*, 955 N.E.2d 247 (Ind. Ct. App. 2011).

> Sudden heat is characterized as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice and rendering a person incapable of cool reflection. Anger alone is not sufficient to support an instruction of sudden heat. Nor will words alone constitute sufficient provocation to warrant a jury instruction on voluntary manslaughter, and this is especially true when the words at issue are not intentionally designed to provoke the defendant, such a fighting words.
>
> In addition, to the requirement of something more than mere words, the provocation must be sufficient to obscure the reason of an ordinary man, an objective as opposed to a subjective standard. Finally, Voluntary Manslaughter involves an impetus to kill which arises suddenly.

*Id.* at 256, 257. The Indiana Court of Appeals found that the only evidence of an argument between Orr and the victims amounted to only words, which under Indiana law, are insufficient to warrant a sudden heat instruction. [ECF No. 8-10.] Thus, the Indiana Court of Appeals concluded that there was no evidence that Orr committed the crime under sudden heat.

> Here, the only evidence of an argument between Orr and the victims is the testimony that Orr said to Williams, "What's that smart remark you said?" Tr. at 223. And Williams responded, "I don't know you to even be saying anything about you." *Id.* There is no evidence of anything more than an exchange of words, and Williams' statement was not provocative, but appears to have been intended to avoid a confrontation with Orr. And, as Orr points out, no witnesses saw or

> heard Orr or the victims in the moments leading up to the shootings. There is
> simply no evidence, let alone a serious evidentiary dispute, to show that sudden
> heat was a factor in the shootings.

(*Id*. at 11.)

Upon review of the evidence and events leading up the shootings, this Court agrees. Nothing in the record establishes anything other than that Orr may have been involved in some sort of verbal altercation. (Trial Tr. 223, 645, 647–48, 658, 688, 690.) However, "[w]ords alone . . . do not constitute sufficient provocation." *Massey*, 955 N.E.2d at 257. Orr does not point to any evidence in the record that would establish he acted in sudden heat. Nor does he argue that the record consists of evidence that would support a sudden heat instruction. Instead, he focuses on the fact that the given voluntary manslaughter instructions were incorrect. [ECF No. 1 at 3; ECF No. 20 at 5–8.]

Since there was no evidence in the record that Orr acted in sudden heat, the State court correctly determined that Orr was not entitled to a voluntary manslaughter instruction. *See Clark v. State*, 834 N.E.2d 153, 158 (Ind. Ct. App. 2005) (noting that "[a]n instruction on voluntary manslaughter is warranted if the evidence demonstrates a serious evidentiary dispute regarding the mitigating factor of sudden heat."). And, since Orr was not entitled to a voluntary manslaughter instruction, the Indiana Court of Appeals reasonably applied its existing precedent to conclude that the erroneous instruction caused him no harm and that his trial counsel was not ineffective for not objecting to it. *See Massey*, 955 N.E.2d at 257–58 (holding that the giving of an erroneous voluntary manslaughter instruction was harmless if the defendant was not entitled to it in the first place). Orr has failed to show that the voluntary manslaughter instructions were warranted or that an objection to them would have reasonably resulted in a different outcome.

Therefore, this ground for habeas relief must be denied.

In his traverse, Orr contends that the Indiana Court of Appeals should not have applied *Massey*[3] in light of the rulings in *Watts v. State*, 885 N.E.2d (Ind. 2008), and *Sanders v. Cotton*, 398 F.3d 572 (7th Cir. 2005). [ECF No. 20 at 5.] However, *Massey* was decided after both *Watts*[4] and *Sanders*[5]. Neither of those cases overruled *Massey* nor called it into question.

### 2. *The Indiana Courts reasonably found that trial counsel was not ineffective for the way she impeached Antonio Foster.*

Antonio Foster and Orr met while they were incarcerated, and Orr told Foster about the murders of Haywood and Williams. Foster agreed to testify against Orr in exchange for a plea

---

[3]The circumstances in *Massey* are virtually identical to those in Orr's case. In *Massey*, the voluntary manslaughter jury instruction suffered from the same error as those at Orr's trial. 955 N.E.2d at 256. And like the lack of evidence of sudden heat in this case, there was no evidence of sudden heat to warrant the giving of the voluntary manslaughter instruction in *Massey*. The *Massey* court held that "the erroneous instruction did not deprive Massey of due process because he was not entitled to it in the first place." *Id.* The court also ruled that Massey's related claim of ineffective assistance surrounding that erroneous instruction failed. *Id.* The holding in *Massey* led the Indiana Court of Appeals to reasonably determine that Orr's counsel was not ineffective for failing to object to the voluntary manslaughter jury instructions.

[4]In *Watts*, the defendant was charged with murder. The state then requested a voluntary manslaughter instruction, to which Watts objected, arguing that he had not introduced any evidence of sudden heat. Watts was ultimately convicted of voluntary manslaughter. The court reversed Watts' voluntary manslaughter conviction, noting that "sudden heat is a mitigating factor, not an element," and found that the trial court erred in instructing the jury on voluntary manslaughter because there was "no possible evidence of sudden heat before the jury," and thus no serious evidentiary dispute existed to warrant the instruction. *Watts*, 885 N.E.2d at 1231–34. The court was largely concerned that the jury may have convicted Watts of voluntary manslaughter as a "compromise." *Id. Watts* does not require a different result because, unlike the defendant in *Watts* who was convicted of voluntary manslaughter, Orr was convicted of murder.

[5]In *Sanders*, the Seventh Circuit held that "[b]ecause a defendant is entitled to a voluntary manslaughter instruction if he presents any appreciable evidence of sudden heat, the trial court's failure to instruct the jury as to the State's burden was not harmless error." *Sanders*, 398 F.3d at 583. *Sanders* does not require a different result either. Unlike the appreciable evidence of sudden heat in *Sanders*, there was no appreciable evidence of sudden heat in Orr's case. Since Orr was not entitled to a voluntary manslaughter instruction, *Sanders* is not instructive.

9

deal. Ultimately, Foster did testify. Orr contends his trial counsel provided ineffective assistance when she did not impeach Foster regarding the total benefit he could receive in exchange for his testimony in Orr's case.

The court of appeals, again citing to the correct standard, found that trial counsel was not ineffective. [ECF No. 8-10 at 12–17.] The court of appeals examined trial counsel's cross-examination of Foster and found it to be thorough:

> [T]he crux of Orr's contention on appeal is that, had his defense counsel advised the jury that Foster faced a sentence "of over one hundred (100) years [without his plea agreement, the jury] would not have found his testimony credible and would not have convicted Orr. Appellant's Br. at 36. But, again, defense counsel cross-examined Foster and established that, without his plea agreement, he faced a possible fifty-year sentence for a Class A felony conviction and an enhancement for being a habitual offender. While Orr's defense counsel did not specify that the enhancement could mean an additional thirty years . . . it was clear that something more than fifty years could have been imposed. . . .
>
> Regardless, defense counsel established that Foster's benefit for his testimony was substantial, and we cannot say that the jury would have been less likely to believe Foster if Orr's defense counsel had gone into more detail regarding the possible sentences Foster had faced. Moreover, Orr exaggerates the impacts of Foster's testimony on the jury's verdict. There was ample evidence of Orr's guilt without Foster's testimony. . . . We cannot say that, had the jury discredited Foster's testimony, it likely would have acquitted Orr of the murders. Orr cannot show that he was prejudiced by defense counsel's impeachment of Foster, and he was not denied the effective assistance of trial counsel on that basis.

(*Id*. at 16–17.)

The court of appeals' decision was reasonable. The jury was informed that Foster was receiving a substantial benefit in exchange for his testimony. Thus, the jury knew of Foster's potential motivation and bias. Orr has not explained how counsel's failure to impeach him differently constitutes ineffective assistance of counsel under *Strickland*. Nor has Orr explained why he believes the Court of Appeals of Indiana's decision finding amounts to an unreasonable

10

adjudication of this case. Instead, Orr focuses on the sole fact that his counsel did not impeach him with the correct potential sentence he was facing without the plea deal. Apparently, Orr believes if the jury would have heard that Foster was facing one hundred years imprisonment without the plea deal, the jury would not have not believed his testimony and Orr would not have been convicted. This Court disagrees. To the extent a plea deal to avoid a potential one hundred-year sentence would further diminish Foster's credibility as a witness, the jury was already fully aware of these issues impacting his credibility. The jury nevertheless chose to credit Foster's testimony. This is likely in large part due to corroborating testimony and evidence.

This Court cannot make a probabilistic determination that a reasonable jury would reach a different result if it heard about Foster's longer potential sentence. *See Whitlock*, 51 F.3d at 64; *Holmes v. Hardy*, 608 F.3d 963, 968 (7th Cir. 2010) ("troubling" new evidence impugning the credibility of state's witness did not establish actual innocence, since at best it established a "mere possibility" that a jury presented with the evidence would have exonerated the petitioner, "not a probability, as is required."). Thus, this is not a ground for habeas relief.

3. ***The Indiana Courts reasonably found that appellate counsel was not ineffective for not appealing the issue of the jury instructions.***

Orr contends his appellate counsel provided ineffective assistance by omitting from his brief on appeal a challenge to the erroneous voluntary manslaughter instructions. In rejecting this claim, the Indiana Court of Appeals cited the *Strickland* standard and determined that this claim was derivative of his claim of ineffective assistance of trial counsel on the erroneous manslaughter instructions. [ECF No. 8-10 at 18.] Thus, the court of appeals concluded that since Orr was not entitled to a voluntary manslaughter instruction, he could not show that he was

prejudiced by his appellate counsel's failure to raise the issue on appeal. (*Id.*)

Here, Orr has not explained how appellate counsel's failure to raise the erroneous voluntary manslaughter instruction constitutes ineffective assistance of counsel under *Strickland*. Nor has he explained why he believes the Court of Appeals of Indiana's decision finding amounts to an unreasonable adjudication of this case. This claim is insufficient to warrant habeas relief for the same reasons the court denied his related ineffective assistance of trial counsel claim. Indeed, *Massey* clearly foreclosed Orr's voluntary manslaughter jury instruction claim. Appellate counsel cannot be ineffective for not raising an issue that has no merit.

**B.     Orr's challenge to the admission of evidence under Indiana Trial Rule 613 is without merit.**

Orr claims that the trial court erroneously allowed the admission of extrinsic evidence of a prior inconsistent statement of LaTonya Burnett under Indiana Evidence Rule 613. Specifically, he complains the trial court allowed Michelle Jones to provide testimony that LaTonya Burnett implicated Orr as the shooter. [ECF No. 20 at 10.] The Respondent argues that this claim is procedurally defaulted.

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259

F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* at 1025–26. "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.* at 1026.

The Respondent argues that this claim is defaulted for both reasons. To start, the Respondent argues that Orr based this claim on state evidentiary rules rather than federal law. When determining whether a claim has been fairly presented to the State courts as a federal claim, courts consider:

> 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

*Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006). Upon review, Orr relied exclusively on State cases and evidentiary rules when presenting this claim to the State courts. [*See* ECF No. 8-3.] Therefore, he did not "alert the state courts to the federal underpinnings of his claim." *Perruquet v. Briley*, 390 F.3d 505, 519 (7th Cir. 2004).

In addition, the state court record demonstrates that Orr presented this claim to the Court of Appeals of Indiana [ECF No. 8-3], but he did not present it to the Indiana Supreme Court [ECF No. 8-2]. Orr admits as much. [ECF No. 1 at 4.] Because he did not fully and fairly present

13

these claims through one full round of state court review, he has procedurally defaulted on these claims.

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). A habeas petitioner can also overcome a procedural default by establishing that the Court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). To meet this exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

It appears as though Orr is trying to argue that error by his appellate counsel should excuse his procedural default. [ECF No. 1 at 4.] Orr claims that appellate counsel refused to file the petition for transfer. Attorney error rising to the level of ineffective assistance of counsel can constitute cause to set aside a procedural default. *Coleman*, 501 U.S. at 753–54; *Wrinkles*, 537 F.3d at 812. However, the exhaustion doctrine requires that an ineffective assistance claim be presented to the state court as an independent claim before it may be used to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000). If the ineffective assistance claim was itself not properly exhausted in state court, "the petitioner will be fully defaulted." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). Orr did not raise this ineffective assistance claim in

his state post-conviction petition, and it is clear that he did not exhaust such a claim in one complete round of state review. [ECF No. 8-7; ECF No. 8-11.] Moore is thus "fully defaulted." *Dellinger,* 301 F.3d at 767. Therefore, the Court can not reach Orr's procedurally defaulted claim on the merits.

Moreover, even if Orr had properly exhausted his claim in State court, he would not have prevailed on it here. *See Howard v. O'Sullivan*, 185 F.3d 721, 723–24 (7th Cir. 1999) ("To be of constitutional import, an erroneous evidentiary ruling must be so prejudicial that it compromises the petitioner's due process right to a fundamentally fair trial. This means that the error must have produced a significant likelihood that an innocent person has been convicted."). Orr's complained of error in the application of Indiana Evidence Rule 613(b), a state law, does not provide a cognizable basis for granting federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (federal habeas relief is only available for a violation of the U.S. Constitution or other federal laws). "[S]tate court evidentiary rulings will rarely serve as grounds for granting a writ of habeas corpus." *Lilly v. Gilmore*, 988 F.2d 783, 789 (7th Cir. 1993). "Unless it is shown that a specific constitutional right has been violated, a federal court can issue a writ of habeas corpus only when a state evidentiary ruling violates the defendant's right to a fundamentally fair trial under the due process clause. *Id.* Here, Orr has never asserted that a specific constitutional right has been violated. Nor has he argued that the state court's ruling to allow Burnett's testimony denied him a fundamentally fair trial. And, for the reasons fully explained by the Indiana Court of Appeals, this Court does not find that to be the case. [ECF No. 8-5 at 5–11.] Therefore, Orr's claim regarding the admission of Michelle Jones testimony is not a basis for habeas relief.

# CERTIFICATE OF APPEALABILITY

As a final matter, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, one of Orr's claims is procedurally defaulted, and he has not provided any meritorious basis for excusing his default. As to his non-defaulted claims, Orr has not made a substantial showing of the denial of a constitutional right, nor could jurists of reason debate the outcome of the Petition or find a reason to encourage him to proceed further. Accordingly, the Court declines to issue Orr a certificate of appealability.

# CONCLUSION

For the reasons set forth above, the Court DENIES the petition [ECF No. 1] and DENIES the petitioner a certificate of appealability.

SO ORDERED on August 27, 2018.

                             s/ Theresa L. Springmann
                             CHIEF JUDGE THERESA L. SPRINGMANN
                             UNITED STATES DISTRICT COURT